# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DR. CLAUDIO SOLFERINI, in his capacity as Trustee of CORRADI S.p.A. | § § § | |
| | § | Civil Action No. 4:18-CV-00293 |
| v. | § | Judge Mazzant |
| | § | |
| CORRADI USA, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Trustee Dr. Claudio Solferini's ("Trustee") Motion for Summary Judgment (Dkt. #28) and Defendant Corradi USA, Inc.'s ("Corradi USA") Motion for Summary Judgment (Dkt. #30). Having considered the motions and the relevant pleadings, the Court finds that Trustee's motion should be denied and that Corradi USA's motion should be granted.

### BACKGROUND

The facts of this case are relatively undisputed. Trustee is suing on behalf of Corradi S.p.A. ("Corradi Italy"), an Italian corporation. Corradi Italy was the majority shareholder of its subsidiary in the United States, Corradi USA. Corradi Italy and Corradi USA are both in the business of selling shading products for residential and commercial outdoor living spaces.

In December 2010, Corradi USA entered into a credit agreement with the Bank of the West (the "Credit Agreement"), which extended a line of credit to Corradi USA in the amount of $500,000. To secure that line of credit, Corradi Italy posted an irrevocable standby letter of credit at Banca Nazionale del Lavoro S.p.A. ("BNL") for the benefit of the Bank of the West (the "Letter of Credit"). In January 2013, Corradi USA and the Bank of the West entered into a modification of the Credit Agreement, increasing the line of credit to $800,000. In connection with the

modification, Corradi Italy increased the Letter of Credit to $800,000. Then, Corradi USA borrowed the full $800,000.

In July 2014, Corradi Italy filed for bankruptcy in an Italian bankruptcy court (the "Italian Court"). The Italian Court appointed Trustee as the person responsible for liquidating Corradi Italy under the Italian Court's supervision. Subsequently, the Bank of the West presented BNL with a demand for payment of the $800,000 under the Letter of Credit. The Bank of the West received the $800,000 to satisfy the Credit Agreement between the Bank of the West and Corradi USA.

Based on this set of facts, Trustee filed suit seeking $800,000 to satisfy the payment made to the Bank of the West. Trustee alleged the following causes of action: equitable subrogation; statutory subrogation; reimbursement; unjust enrichment; and quantum meruit.

On June 28, 2019, Trustee filed his motion for summary judgment (Dkt. #28). On July 19, 2019, Corradi USA filed a response to the motion (Dkt. #31). On July 26, 2019, Trustee filed his reply (Dkt. #35). On August 2, 2019, Corradi USA filed a sur-reply to the motion (Dkt. #29).

Additionally, on July 22, 2019, Corradi USA filed objections to evidence submitted by Trustee in his motion for summary judgment (Dkt. #34). Trustee filed a response to these objections on August 2, 2019 (Dkt. #38).[1]

Moreover, on June 28, 2019, Corradi USA filed its motion for summary judgment (Dkt. #30). On July 19, 2019, Trustee filed a response in opposition (Dkt. #33). On July 26, 2019, Corradi USA filed its reply in support of its motion (Dkt. #36). Finally, on August 2, 2019, Trustee filed his sur-reply (Dkt. #37).

---

[1] Corradi USA objected to evidence submitted by Trustee (Dkt. #34; Dkt. #38). The Court reached its conclusion without the challenged evidence or considered it and still sided with Corradi USA. Thus, the Court need not rule on the objections.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at

248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

While the parties agree as to most of the facts in this case, they disagree on whether Trustee has established that Corradi Italy paid Corradi USA's debt. Specifically, the parties disagree on *who* made the $800,000 payment to the Bank of the West to satisfy the Credit Agreement—Corradi Italy or BNL. Trustee argues that Corradi Italy made the payment; therefore, Corradi Italy is entitled to subrogation of the $800,000 "windfall" (Dkt. #35 at p. 10). Conversely, Corradi USA contends that BNL made the payment; thus, Corradi Italy is not entitled to subrogation (Dkt. #30 at p. 6).

This determination is critical to every cause of action asserted by Trustee against Corradi USA.[2] Accordingly, the Court must determine who made the payment before turning to any other inquiry. To do so, the Court must more fully develop the facts and arguments surrounding Corradi Italy's accounts with BNL and the $800,000 payment.

---

[2] Trustee claims that he should recover under equitable subrogation, statutory subrogation, reimbursement, unjust enrichment, and quantum meruit. These claims are all based on the Trustee's contention that Corradi Italy made the $800,000 payment to the Bank of the West. *See* (Dkt. #28 at pp. 17–26).

### I. Whether Corradi Italy or BNL Paid the Debt

According to Trustee, at the time the Letter of Credit was issued by BNL, Corradi Italy maintained several of its own lines of credit at BNL and had a $1,000,000 line of credit that supported the Letter of Credit in favor of the Bank of the West (Dkt. #28 at p. 11).  In connection with the lines of credit, Corradi Italy maintained a bank account with BNL ("Corradi Italy's BNL Account") (Dkt. #28 at p. 11).  According to Trustee, all this together resulted in the following agreement: "BNL agreed to loan Corradi Italy sufficient funds to satisfy the obligations under the Letter of Credit," if the Bank of the West drew on the Letter of Credit (Dkt. #28 at p. 12).  Thus, when the Bank of the West presented BNL with a demand for payment under the Letter of Credit in December 2014, pursuant to the Letter of Credit and the lines of credit with BNL, BNL debited Corradi Italy's BNL Account and transferred the $800,000 payment to the Bank of the West (Dkt. #28 at pp. 13–14).  Corradi Italy's bank records reflect a foreign transfer from Corradi Italy's BNL Account, and the Bank of the West's records indicate that the payment came from Corradi Italy's BNL account (Dkt. #28 at p. 14).  Subsequently, BNL notified Corradi Italy of the payment (Dkt. #28 at p. 14).  In Corradi Italy's bankruptcy proceeding, BNL submitted a claim for payment on the $800,000, along with other money owed under the lines of credit (Dkt. #28 at pp. 15–16). The Italian Court overruled Trustee's objections to the claim and ordered payment from the bankruptcy estate to BNL (Dkt. #28 at p. 16).  Based on this set of facts, Trustee argues that Corradi Italy made the payment and Trustee is entitled to judgment on its claims in this case (Dkt. #28 at pp. 17–22).

Corradi USA contends rather that BNL made the payment (Dkt. #30 at p. 9).  According to Corradi USA, pursuant to the Letter of Credit, BNL was obligated to make a payment to the Bank of the West, and then Corradi Italy was required to reimburse BNL (Dkt. #30 at p. 9).  Corradi

5

USA argues that only once Corradi Italy reimbursed BNL, did Corradi Italy make a payment (Dkt. #30 at p. 6). Corradi USA asserts that because Corradi Italy has not reimbursed BNL, it is BNL who made the payment (Dkt. #30 at pp. 6–7). The Court agrees with Corradi USA, finding that BNL—not Corradi Italy—made the $800,000 payment to the Bank of the West.

The transaction at issue was governed by a letter of credit (Dkt. #28 at p. 7; Dkt. #30 at p. 6). There are usually three parties to a letter of credit transaction: (1) the customer, the party "who generally procures a letter of credit," (2) the beneficiary, "the party who receives the funds pursuant to the letter of credit," and (3) the issuer (usually a bank), "the party that commits to pay upon the occurrence of a certain condition." *See, e.g.*, *In re E. Tex. Steel Facilities, Inc.*, 117 B.R. 235, 239 (Bankr. N.D. Tex. 1990); *see also Letter of credit*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "letter of credit" as an "instrument under which the issuer ([usually,] a bank), at a customer's request, agrees to honor a . . . demand for payment made by a third party (the *beneficiary*), as long as the . . . demand complies with specified conditions"). Furthermore, a letter of credit transaction creates three separate and distinct obligations between these three parties. *In re E. Tex. Steel Facilities, Inc.*, 117 B.R. at 239. These three obligations include: (1) the underlying contract between the customer and the beneficiary; (2) the customer's contract with the issuer; and (3) the issuer's contract to pay the beneficiary. *In re Stonebridge Techs., Inc.*, 291 B.R. 63, 69 (Bankr. N.D. Tex. 2003) (citing *In re Originala Petroleum Corp.*, 39 B.R. 1003, 1014–15 (Bankr. N.D. Tex. 1984)). Notably, in regard to the issuer's obligations, the Texas Supreme Court stated:

> [An issuer] . . . acts as a principal, not as an agent of the [customer], and it engages its own credit. Thus, upon issuing a letter of credit, [the issuer] assumes a primary obligation independent of the underlying contract and agrees that [the issuer] will pay upon presentment of documents required by the instrument.

*Phillipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40 (Tex. 1990) (citing TEX. BUS. & COM. CODE §§ 5.114(a) comment 1, 5.117 comment (Vernon 1968); *Republic Nat'l Bank of Dall. v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1979)).

The Letter of Credit in this case is in line with the general understanding of letters of credit. This is demonstrated by the "GENERAL CONTRACT CONDITIONS FOR RELEASE OF FINANCIAL STANDBY LETTERS OF CREDIT." Specifically, the contract states:

> **Paragraph 2.** The [Issuer (BNL)] shall pay the sums requested by the beneficiary [(Bank of the West)] . . . without the Customer [(Corradi Italy)] being able to raise objections or disputes against the [Issuer (BNL)]
>
> **Paragraph 3.** The Customer [(Corradi Italy)] agrees to make available, or to reimburse upon the simple request of the [Issuer (BNL)] the amounts that such party is requested to pay to the beneficiary creditor of the standby letter of credit granted.

(Dkt. #30, Exhibit 7 at p. 1).

Simply put, the Letter of Credit sets out the three usual parties: (1) the customer—Corradi Italy; (2) the beneficiary—Bank of the West; and (3) the issuer—BNL (Dkt. #30, Exhibit 5). Furthermore, the Letter of Credit describes the obligations incurred by the parties. Like the typical letter of credit transaction, Corradi Italy (the customer) procured a letter of credit, in which BNL (the issuer) would pay the Bank of the West (the beneficiary) when that demand was made. Ultimately, the Bank of the West demanded payment under the Letter of Credit, and BNL made that payment to the Bank of the West. Thus, this Letter of Credit fits within the general structure and understanding of a letter of credit.

Accordingly, BNL's obligations, as the issuer, are those described by the Texas Supreme Court. Specifically, when BNL paid $800,000 to the Bank of the West, BNL (the issuer) was acting as a principal, not as an agent of Corradi Italy (the customer). *See Phillipp Bros., Inc.*, 787 S.W.2d at 40. Because BNL is not acting as Corradi Italy's agent, BNL's payment was not made

on behalf of Corradi Italy.[3]  Indeed, BNL "engage[d] its own credit." *Id.*  As such, the Court finds that it was BNL—not Corradi Italy—who made the payment.

Furthermore, to the extent Trustee argues that the debit entry to Corradi Italy's BNL account demonstrated that Corradi Italy made the payment, the Court is not persuaded.  A payment is a "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation" or "[t]he money or other valuable thing so delivered in satisfaction of an obligation."  *Payment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Here, BNL debited Corradi Italy's BNL Account which was supported by a $1,000,000 line of credit (Dkt. #33 at p. 10).  A line of credit is merely "[t]he maximum amount of borrowing power extended to a borrower by a given lender to be drawn on by the borrower as needed."  *Line of credit*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Thus, debiting Corradi Italy's BNL Account was merely an extension of credit, detailing how much Corradi Italy owed to BNL.  Furthermore, because Corradi Italy's BNL account held a negative balance, the debit entry did not result in a payment as there was no actual delivery of money from Corradi Italy's negative account.[4]  *See* (Dkt. #30, Exhibit 10).  For this reason, the Court does not consider the debit entry to Corradi Italy's account as establishing that it made payment to the Bank of the West.

Next, the Court considers the effect of its finding—that Corradi Italy did not make the $800,000 payment—on the following claims asserted by Trustee: (1) equitable subrogation; (2) statutory subrogation; (3) reimbursement; (4) unjust enrichment; and (5) quantum meruit.

---

[3] This is essentially the argument that Trustee makes in its motion for summary judgment—that BNL was acting as Corradi Italy's agent.  Specifically, Trustee argues that because there was a debit to Corradi Italy's BNL Account, which was supported by a line of credit, the fact that money was sent to the Bank of the West constituted payment by Corradi Italy (Dkt. #28 at p. 19).  The Court disagrees, however, for the reasons stated above.

[4] The Court acknowledges that the parties present several other arguments surrounding whether Corradi Italy made the payment, including the effect of arguments and rulings made in the Italian bankruptcy proceeding and whether a payment can be made when a bank account is empty and the debit results in an "overdrawn" account.  However, these arguments did not affect the Court's analysis; therefore, the Court does not address them.

## II. Equitable Subrogation

The Court finds that Trustee's claim for equitable subrogation fails. In considering equitable subrogation, another judge from this Court stated the following:

> "Equitable subrogation may be invoked to prevent unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. A right to subrogation is often asserted by one who pays a debt owed by another." *Starcraft Co. v. C.J. Heck Co. of Tex., Inc.*, 748 F.2d 982, 990–91 (5th Cir. 1984) (citing *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980)). To recover under the doctrine of equitable subrogation, the claimant must demonstrate that (1) the party on whose behalf the claimant discharged a debt was primarily liable on the debt, (2) the claimant paid the debt involuntarily, and (3) the circumstances of the case favor equitable relief. *See Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142–46 (Tex. 2008).

*Brunswick Homes, LLC v. Mims*, No. 4:07-CV-421, 2008 WL 4500360, at *3 (E.D. Tex. Sept. 30, 2008).

Because the Court finds that Corradi Italy did not make the payment, Trustee cannot meet all of the elements necessary to establish equitable subrogation. *See id.* (requiring the claimant to pay a debt in order to recover under equitable subrogation). Accordingly, Trustee's equitable subrogation claim fails.

## III. Statutory Subrogation under Tex. Bus. & Com. Code § 5.117

The standard for statutory subrogation is set out in § 5.117 of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code § 5.117. There are two subsections to this standard which are pertinent here. The first subsection, § 5.117(a), applies to issuers, while the second subsection, § 5.117(b), applies to customers. *See Id.* § 5.117(a)–(b). In its motion for summary judgment, Corradi USA argues that Trustee does not have a claim for statutory subrogation under § 5.117(a) (Dkt. #30 at pp. 16–17). At the same time, Trustee's motion for summary judgment

9

requests alternative relief that would fall under § 5.117(b) (Dkt. #28 at pp. 26–27). Accordingly, the Court considers the merit of a claim under each subsection.

### A. Statutory Subrogation under § 5.117(a)

Here, the Court finds that Trustee cannot recover under § 5.117(a). Section 5.117(a) states that "[a]n issuer that honors a beneficiary's presentation is subrogated to the rights of the beneficiary to the same extent as if the issuer were a secondary obligor of the underlying obligation owed to the beneficiary . . . ." Tex. Bus. & Com. Code § 5.117(a). Thus, the issuer may recover under this section if the issuer makes a payment to the beneficiary.

As previously described, the Court determined that BNL was the issuer and that BNL made the payment to the beneficiary, Bank of the West. Therefore, because Corradi Italy was not the issuer and did not make payment to the beneficiary, Corradi Italy cannot recover on a claim of statutory subrogation under § 5.117(a). Accordingly, the Court finds that this claim fails.

### B. Statutory Subrogation under § 5.117(b)

As an alternative ground for relief, Trustee argues that Corradi Italy is entitled to receive the amount it has actually paid to BNL—$115,666.76 that it paid on BNL's claim in Corradi Italy's bankruptcy (Dkt. #28 at pp. 26–27). Corradi USA argues that Trustee cannot make this claim for alternative relief (Dkt. #31 at pp. 35–36). Specifically, Corradi USA asserts that Trustee cannot make this argument now because Trustee did not assert the claim or the facts supporting it in his Amended Complaint (Dkt. #31 at pp. 35–36; Dkt. #15). The Court agrees.

A party may not raise a claim in its motion for summary judgment that was not asserted in the party's complaint. *See Slack v. Baker*, No. 6:09-CV-72, 2011 WL 831296, at *3 (E.D. Tex. Feb. 2, 2011) (citing *Vetromile v. JPI Partners*, LLC, 706 F. Supp. 2d 443, 455 (S.D.N.Y. 2010) (stating that "a party may not automatically raise a claim at summary judgment that he did not

plead"); FED. R. CIV. P. 56); *see also U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (holding that the district court did not err in denying the plaintiff's motion for summary judgment because he attempted to raise new claims that were not asserted in his complaint) (citations omitted).

Here, Trustee's motion for summary judgment raises a new claim that was not asserted in his amended complaint—statutory subrogation under § 5.117(b) of the Texas Business and Commerce Code. In his Amended Complaint, Trustee claimed statutory subrogation only under § 5.117(a) (Dkt. #15 at p. 6) (citing Tex. Bus. & Com. Code § 5.117(a)) (claiming that Corradi Italy was the issuer, and as a result, it was subrogated to the rights of the Bank of the West).

Now, in his motion for summary judgment, Trustee claims that because Corradi Italy paid BNL a portion of the $800,000 that BNL paid to the Bank of the West, Corradi Italy is entitled to recover that portion (Dkt. #28 at pp. 26–27). Here, the Court found that Corradi Italy was the customer in the Letter of Credit transaction. Thus, because Trustee's current claim involves the customer's subrogation rights for paying the issuer, this claim is based on statutory subrogation under § 5.117(b), rather than § 5.117(a). Because Trustee raised a § 5.117(b) claim that was not already asserted in his amended complaint, Trustee improperly raised a new claim in his motion for summary judgment; thus, the Court will not consider it. Furthermore, "[t]o the extent that [Trustee's] motion for summary judgment may be construed as a request for leave to amend the complaint" to add a secondary subrogation claim under § 5.117(b), "[Trustee] has already amended his complaint once"; therefore, "leave of court is required to amend again." *See Slack*, 2011 WL 831296, at *3 (citing FED. R. CIV. P. 15(a)(2)).[5]

---

[5] The Court does not consider whether leave to file an amended complaint should be granted because Trustee did not request such relief in his motion for summary judgment or in any briefing in response to the pending motions. *See* (Dkt. #28; Dkt. #33; Dkt. #35; Dkt. #37).

## IV. Reimbursement

As an initial matter, Corradi USA disputes whether there is a common law cause of action for reimbursement in this case (Dkt. #30 at pp. 26–27). Even assuming that such a cause of action does exist, Corradi USA asserts that the claim must fail due to the lack of Corradi Italy's payment (Dkt. #30 at p. 27). The Court agrees.

"Reimbursement is an equitable remedy." *Nelson v. Nelson*, 193 S.W.3d 624, 632 (Tex. App.—Eastland 2006, no pet.). Reimbursement is defined as "repayment" or "indemnification." *Reimbursement*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, this definition necessarily requires that one person make a payment to another person and then subsequently ask to be refunded. *See id.*; *see also Barras v. Barras*, 396 S.W.3d 154, 173 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (stating that reimbursement "arises when the funds . . . of one [person] are used to benefit . . . another [person] without . . . [the payor] receiving some benefit).

Trustee asserts that Corradi Italy should be reimbursed by Corradi USA because "Corradi Italy satisfied the debt of Corradi USA by making an $800,000 payment to Bank of the West" (Dkt. #28 at p. 23). However, because the Court decided that Corradi Italy did not make the $800,000 payment to the Bank of the West, there has been no payment by Corradi Italy. As a result, Trustee's claim for reimbursement fails.

## V. Unjust Enrichment

The Court further finds that Trustee's claim for unjust enrichment fails. "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 6988193, at *16 (E.D. Tex. Sept. 14, 2017) (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied)). Thus,

"[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *METX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569, 586 (E.D. Tex. 2014) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Trustee asserts that Corradi USA was unjustly enriched by Corradi Italy's payment of Corradi USA's debt when it transferred money to the Bank of the West. But, because the Court determined that Corradi Italy did not pay the Bank of the West, the Court finds that Trustee's claim for unjust enrichment fails.

## VI. Quantum Meruit

Lastly, the Court finds that Trustee's claim under quantum meruit fails. "To recover under quantum meruit a claimant must prove that: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) (citing *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

Trustee asserts that Corradi Italy provided valuable services to Corradi USA by repaying Corradi USA's debt to the Bank of the West (Dkt. #28 at p. 25). Based on the Court's finding that Corradi Italy did not pay the Bank of the West, Corradi Italy did not provide valuable services to Corradi USA as asserted by Trustee. Accordingly, Trustee's claim under quantum meruit also fails.

## CONCLUSION

It is therefore **ORDERED** Trustee's Motion for Summary Judgment (Dkt. #28) is hereby **DENIED** and Defendant Corradi USA, Inc.'s Motion for Summary Judgment (Dkt. #30) is hereby **GRANTED**. It is further **ORDERED** that Defendant Corradi USA, Inc.'s Objections to Plaintiff's Summary Judgment Evidence (Dkt. #34) are **DENIED** as moot.

**SIGNED this 30th day of March, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE